UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN MARTIN, et al.<br><br>Defendants. | No. CR 07-1205 (A) CBM<br><br>ORDER DENYING GOVERNMENT'S FOR AN ANONYMOUS JURY |

The matter before the Court is the Government's Motion for An Anonymous Jury (the "Motion"). [Doc. No. 124.] The parties appeared before the Court for oral argument and upon consideration of the papers and arguments presented, the Court DENIES the Government's Motion.

**LEGAL STANDARD**

The Ninth Circuit has recognized that the use of an anonymous jury is an "unusual measure" that is permissible only in limited circumstances. *United States v. Shryock*, 342 F.3d 948, 971 (9th Cir. 2003).[1] In *Shryock*, the Ninth

---

[1] The issue of empaneling an anonymous jury was an issue of first impression in *Shryock*. 342 F.3d at 970. *Shryock* and *United States v. Fernandez*, 388 F.3d 1199 (9th Cir. 2004), are the only two Ninth Circuit cases reviewing a district court's decision to empanel an anonymous jury.

1

Circuit held that a court "may empanel an anonymous jury where (1) there is a strong reason for concluding that it is necessary to enable the jury to perform its factfinding function, or to ensure juror protection; and (2) reasonable safeguards are adopted by the trial court to minimize any risk of infringement upon the fundamental rights of the accused." *Id.* (adopting the First Circuit's test from *United States v. DeLuca*, 137 F.3d 24, 31 (1st Cir. 1998)). Although the following factors are neither exclusive nor dispositive, the Ninth Circuit has recognized a need for jury protection based on a combination of factors, including:

> (1) the defendants' involvement with organized crime; (2) the defendants' participation in a group with the capacity to harm jurors; (3) the defendants' past attempts to interfere with the judicial process or witnesses; (4) the potential that the defendants will suffer a lengthy incarceration if convicted; and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation and harassment.

*United States v. Fernandez*, 388 F.3d 1199, 1244 (9th Cir. 2004) (quoting *Shryock*, 342 F.3d at 971). Further, the Ninth Circuit has instructed that the district court should make its decision based on the "totality of the circumstances." *Shryock*, 342 F.3d at 971.

## DISCUSSION

Defendants Brian Martin ("Martin") and Travis Zipper ("Zipper") are accused of participating in a conspiracy to extort money by threats and force from various individuals in connection with the collection of a loan. In support of its Motion, the Government asserts that at least four of the five *Shryock* factors are present supporting a finding that the jurors in this case require the protection of anonymity to carry out their fact-finding function. (*Id.* at 3:26-4:1.) The evidence before the Court consists of the allegations contained in the Indictment, which the Court assumes as true for the purposes of this Motion. Even if the Court assumes the truth of the allegations, the Court finds there is insufficient evidence to meet the standard adopted by the Ninth Circuit in *Shryock* and, accordingly, denies the

Government's Motion.

## The Five-Factor Analysis

### A. Defendants' Involvement with Organized Crime

The Government asserts that the first factor is met because Martin has repeatedly represented – to Dean (the principal extortion victim) and law enforcement agents – that he is connected to an organized crime syndicate that uses murder and threats of murder to collect debts through extortion. (*Id.* at 4:4-8.) As for Zipper, the Government maintains that Zipper has closely associated himself with Martin for years, predating the events in this case. (*Id.* at 4:8-10.) The Government then concedes that it believes that Defendants' statements to Dean suggesting that other members of their organization would harm Dean if he failed to pay Defendants "was nothing more than a ruse designed to intimidate and threaten the victim." (*Id.* at 4:10-14.)

Both of the Ninth Circuit cases upholding a district court's decision to empanel an anonymous jury involved an actual, identifiable involvement with organized crime. In *Shryock*, the defendants were convicted for various offenses arising from their involvement with the Mexican Mafia. 342 F.3d at 959. Similarly, the defendants in *Fernandez* were convicted for charges relating to their participation in or involvement with the Mexican Mafia. 388 F.3d at 1214. In both cases, there was substantial evidence of the existence of the Mexican Mafia, the breadth of its activities, and defendants' involvement in those activities. *See Shryock*, 342 F.3d at 961-970; *Fernandez*, 388 F.3d at 1215-1217. In addition, the cases from other Circuits, primarily relied on by Defendants, also involve extensive, clear involvement with organized crime. *See United States v. Wong*, 40 F.3d 1347, 1355-1357 (2nd Cir. 1993) (defendants charged with membership in a racketeering enterprise known as the "Green Dragons," whose criminal organization and activities are discussed extensively); *United States v. Krout*, 6

F.3d 1420, 1424-1426 (5th Cir. 1995) (defendants convicted of offenses relating to involvement in Mexican Mafia where substantial evidence was introduced regarding the gang's activities, including the gang's constitution, which identifies itself as a "criminal organization....[dealing] in drugs, contract killings, prostitution, large scale robbery [etc.]"); *United States v. Darden*, 70 F.3d 1507, 1532-33 (8th Cir. 1995) (defendants charged with participating in an "extraordinarily violent organized criminal enterprise" with a known, extensive history).

In this case, the Government does not allege with certainty that Defendants are involved in any particular organized crime syndicate. Rather, the Government itself concedes that it believes that Defendants' statements to Dean in this regard were a ruse to intimidate Dean. Despite this belief, the Government concludes that Martin may in fact have connections to organized crime, and, by association, Zipper may have those connections as well. The Government essentially alleges that Martin's involvement with organized crime is a mere possibility, which is in direct contrast to the types of organized crime present in cases where courts found anonymity to be necessary to protect jurors. *See, supra*, citations to *Shryock, Fernandez, Wong, Krout, and Darden*. Here, the Government's allegations are markedly vague – there is no specific allegation identifying any actual organized crime syndicate of which either Defendant is a member. Accordingly, this factor does not support empaneling an anonymous jury.

**B. Defendants' Participation in a Group with the Capacity to Harm Jurors**

In support of this factor, the Government states that Martin's own admissions establish that he is connected to an organized crime syndicate and that "[s]uch racketeering organizations are also widely understood to have the capacity to 'reach' and intimidate jurors." (Mot. at 6:22-24) (citing *Darden*, 70 F.3d at 1532-33). Specifically, the Government relies on statements Martin made to Dean

suggesting that he was affiliated with a group that can "find anything on anybody, anywhere." (*Id.* at 6:24-26.) In addition, the Government states that recordings of conversations Martin made between himself and others further suggest connections between Martin and a dangerous organized crime syndicate:

- Martin explaining that he "works with" approximately 58 people, and only three of the 58 do not have criminal records;
- Martin boasting of the long "reach" of the criminal organization to which he is supposedly connected when he stated "[w]e have collection networks of criminals all over the world and lawyers all over the world and governments all over the world…[w]e do dirty work…it's not me, it's my organization;" and
- Martin explaining that he and his organization use murder and threats to collect debts.

(*Id.* at 7:2-8:3.) Finally, the Government cites to Martin's record of arrests and criminal convictions to establish his personal capacity for violence and violent nature. (*Id.* at 8:3-9:16.)

As discussed above, the Government's claims regarding Martin's involvement with organized crime are tenuous and the Government, itself, doubts whether Martin is actually involved in any organized crime. Moreover, the Government's reliance on *Darden* is misplaced because *Darden* is distinguishable. In *Darden*, each of the defendants was charged with participating in an "extraordinarily violent organized criminal enterprise…that had an extensive history of conflict with the criminal justice system, including the intimidation and murder of government witnesses. 70 F.3d at 1532-33. In contrast, neither Martin nor Zipper are charged with participation in any specific large-scale organized crime (and most, if not all, of the Government's evidence in support involves Martin, not Zipper). In fact, the Government is not even certain that there is an organized crime syndicate of which Defendants are a part. Importantly, there is no evidence of past interference with the judicial process or with witnesses, or, as in *Darden*, a history of intimidation and murder of witnesses. Accordingly, this factor does not support empaneling an anonymous jury.

### C. Defendants' Past Attempts to Interfere with the Judicial Process or Witnesses

The Government argues that this factor is met based on Martin's demonstrated contempt toward law enforcement authorities and his boasts regarding his criminal history. (Mot. at 9:17-24.) In addition, the Government also cites to Martin's behavior during an August 20, 2007 meeting with law enforcement authorities in this case. (*Id.* at 9: 22-26.) Specifically, the Government states that Martin verbally abused and attempted to intimidate the agents present at the meeting and flaunted their warnings not to engage in extortionate conduct. (*Id.*)

The Government's evidence in support of this factor does not show that Martin has previously attempted to interfere with the judicial process or witnesses. At best, it shows that Martin has a criminal history and a disregard for the law. As for Martin's behavior during the August 20, 2007 meeting, while inappropriate, it does not rise to the level of interfering with the judicial process. As to Zipper, the Government makes no allegations as to any past attempts to interfere with the judicial process. Accordingly, based on the foregoing, this factor does not support empaneling an anonymous jury.

### D. Potential That the Defendants Will Suffer a Lengthy Incarceration If Convicted

The Government states that Martin and Zipper face highly substantial prison sentences if convicted after trial. (Mot. at 10: 4-5.) Based on preliminary calculations, the Government estimates that Martin's total offense level would be 28, resulting in an 87-to-108 month Guidelines range. (Mot. at 10:5-8.) The Government estimates Zipper's total offense level at 26, resulting in a 63-to-78 month Guidelines range. (*Id.* at 10:9-11.)

In evaluating this factor, the inquiry is whether the length of the potential sentence provides a defendant with an "inducement to resort to extreme measures in any effort to influence the outcome of the trial." *Shryock*, 342 F.3d at 972

(quoting *DeLuca*, 137 F.3d at 32.) The cases primarily relied on by the parties where the reviewing court upheld the trial court's decision to empanel an anonymous jury are instructive in this regard. For example, in *Shryock* the shortest sentence was for 384 months while the longest was life imprisonment plus 300 months. 342 F.3d at 960; *see also Wong,* 40 F.3d at 1355 (defendants' sentences included multiple concurrent terms of life imprisonment, concurrent terms of ten years' imprisonment, and concurrent terms of 210 and 120 months imprisonment); *Krout*, 66 F.3d at 1428 (shortest term of imprisonment was 120 months, with other defendants receiving sentences ranging from 300 months to life in prison); *Darden*, 70 F.3d at 1533 (all defendants faced possible life sentences). In light of the foregoing, this factor does not support empaneling an anonymous jury.

### E. Existence of Extensive Publicity That Could Enhance the Possibility That Jurors' Would Be Exposed to Intimidation and Harassment

Although they each state it differently, all of the parties agree that, to date, there has been no publicity in this case. (Mot. at 10:13-14; Zipper Opp. at 3:14; Martin Opp. at 3:14.) Accordingly, this factor does not support empaneling an anonymous jury.

## CONCLUSION

Based on the foregoing, the Court DENIES the Government's Motion for An Anonymous Jury.

IT IS SO ORDERED.

DATED: February 20, 2009        By_____
                                CONSUELO B. MARSHALL
                                UNITED STATES DISTRICT JUDGE