1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT
9        CENTRAL DISTRICT OF CALIFORNIA
10
11
12   UNITED STATES OF AMERICA,          )   No.  CR 07-1205 (A) CBM
                                        )
         Plaintiff,                     )   ORDER GRANTING THE
13                                      )   GOVERNMENT'S MOTION *IN*
         v.                             )   *LIMINE* TO EXCLUDE EVIDENCE
14                                      )   AND ARGUMENT RELATING TO
     BRIAN MARTIN, et al.               )   "CLAIM OF RIGHT" DEFENSE
15                                      )
         Defendants.                    )
16   _____)

17        The matter before the Court is the Government's Motion *In Limine* to

18   Exclude Evidence and Argument Relating to "Claim of Right" Defense (the

19   "Motion").  [Doc. No. 122.]  The parties appeared before the Court for oral

20   argument and upon consideration of the papers and arguments presented, the

21   Court GRANTS the Government's Motion.

22                              **BACKGROUND**

23        Defendants Brian Martin ("Martin") and Travis Zipper ("Zipper") are

24   accused of participating in a conspiracy to extort money by threats and force from

25   various individuals in connection with the collection of a loan.  The charges in this

26   case arise out of an alleged attempt by Martin to obtain money that he lost through

27   a business investment.  The Government alleges that in 2007, Martin invested

28   approximately $500,000 with an individual named Kenneth Montlouis

                                        1

1  ("Montlouis"). (Second Superseding Indictment ("Indictment") at ¶¶ 7a; 8a.)

2  When Martin did not receive the investment return that he expected, he traveled to

3  Africa with Robbison, where Montlouis was then staying, to recover his money.

4  (*Id*. at ¶¶ 7b, 8a.)

5  In May 2007, Martin learned that an individual named Jonathan Dean

6  ("Dean") owed Montlouis money. (*Id*. at ¶ 7b.) On or about May 7, 2007, Martin,

7  Zipper and Robbison traveled to California to meet Dean at a restaurant. (*Id*. at

8  ¶ 8j.) Martin told Dean that he could pay his debt to Montlouis by giving Martin

9  $500,000. (*Id*.) He purportedly implied that, if Dean did not pay the money, he

10  would be injured. (*Id.* at ¶ 8k.) On May 23, 2007, in an attempt to collect money

11  from Dean, Martin allegedly induced Dean to sign a contract that stated Dean

12  would pay Martin $500,000. (*Id*. at ¶ 8o.)

13  Over the next few months, Dean made sporadic payments totaling tens of

14  thousands of dollars by depositing money into Zipper's bank account. (*Id*. at

15  ¶¶ 8q-r.) When Dean missed a payment, Martin and/or Zipper would send a text

16  message to Dean, implying that he, his family members, or his roommates would

17  be physically harmed. (*Id.* at ¶¶ 7h, 8t, u, y, bb, cc, hh, kk.) In addition, in order

18  to induce Dean to pay, Martin, Zipper and Robbison repeatedly informed Dean

19  that Montlouis was going to be physically harmed or murdered at Martin's

20  request. (*Id*. at ¶¶ 7j, 8p, ll, mm.)

21  **LEGAL STANDARD**

22  The Ninth Circuit has held that defendants are not entitled to a "claim of

23  right" instruction in cases under the Hobbs Act involving threats of physical

24  violence. *United States v. Daane*, 475 F.3d 1115, 1119 (9th Cir. 2007) (holding

25  district court did not err when it rejected defendants' proffered "claim of right"

26  instruction). In *Daane*, the Court held that the "claim of right" defense is limited

27  to cases involving a threat of economic harm or cases involving a threat of

28  physical harm within the context of a labor dispute. *Id.* at 1119-20.

1

## DISCUSSION

2      In its Motion, the Government first requests that the Court exclude any and
3  all argument that Defendants' alleged conduct in this case was justified because
4  they were legally entitled to the funds the Government has charged them with
5  extorting. (Reply at 1:2-5.) Second, the Government requests that the Court
6  exclude any and all evidence relating to the circumstances under which Martin
7  allegedly lost money invested with Montlouis and whether any resulting debt was
8  "legitimate." (*Id*. at 1:6-8.)

9      The Government argues that Defendants are not entitled to a "claim of
10  right" defense because there is no justification for the use of threats of physical
11  harm for Hobbs Act violations outside of the labor dispute context. (Mot. at 1:19-
12  27.) Although the Government recognizes that Defendants may want to introduce
13  evidence relating to "claim of right" to show bias, explain the conduct of a
14  witness, or impeach, and does not dispute that Defendants should be permitted to
15  do so, the Government maintains that Defendants should not be permitted to argue
16  that the contracts between Martin and Dean provide a defense to the use of threats
17  of physical harm. (*Id*. at 2.) In addition, the Government argues that evidence of
18  precisely how Martin lost the money invested with Montlouis and whether
19  Montlouis' resulting debt to Martin was legitimate should be excluded both under
20  *Daane* and under Rule 403 as distracting and confusing to the jury. (*Id*. at. 3:11-
21  15.)   The Government further argues that allowing the defense to introduce such
22  evidence would create an "enormous side-show" that would be highly prejudicial
23  to Defendants, requiring the Government to explain that the money invested by
24  Montlouis was fraudulently obtained by Defendants and thus never legitimately
25  belonged to them. (*Id*. at 4:16-21.)

26      Defendants Zipper and Martin oppose the Government's Motion for
27  different reasons. In his response brief and during oral argument, Zipper stated
28  that he is neither seeking a "claim of right" instruction, nor asserting a "claim of

3

right" defense.  Instead, Zipper argues that his theory of defense is that he believed the funds owed under the contract between Martin and Dean were funds that were legitimately owed and that he did not have knowledge that Martin had threatened Dean.  (*Id.* at 2:22-26; 3:9-10.)

During oral argument, Zipper and the Government agreed that Zipper could introduce evidence of Zipper's state of mind as to his belief that the contract was legitimate, which provides an explanation for his interactions with Martin and Dean.  The Government has stated both in its briefs and during argument that Zipper's defense that he didn't know about Martin's threats and that the only reason he was meeting with Dean was because he thought there was a contract is an appropriate defense.  Accordingly, based on these representations, there does not appear to be any issue with respect to Zipper's defense.

In contrast, Martin responds to the Government's Motion by stating that in this case Montlouis effectively assigned the right to collect Dean's debt to Martin and that Dean signed two contracts agreeing to pay Martin $500,000.  (Martin Opp. at 1:21-24.)  In light of these facts, Martin claims that it "would be impossible for [him] to assert his right to enforce the contracts without asserting his right to the monies sought.  (*Id.* at 3:2-3.)

During oral argument before this Court on February 19, 2009, Defendant Martin made the following proffer with respect to the "claim of right" defense he purports to assert at trial:

1.  Martin was given information about an individual who was looking for investors regarding a gold mine operation;
2.  Telephone contacts were made between Martin and Montlouis regarding the potential investments;
3.  Martin agreed to and later executed the appropriate agreements to loan Montlouis $500,000;
4.  Montlouis did not pay Martin back; and
5.  Montlouis and Elvira Garay proposed the idea to Martin of assigning a debt that Dean owed to Montlouis to Martin via a three-way conference call between Martin, Gray and Dean.

4

1       In response, the Government objected to the first three statements of the

2   proffer, but agreed that the fourth and fifth statements were proper.

3       Ninth Circuit law is clear that a "claim of right" instruction, or defense, is

4   not available in cases outside of the labor context alleging violations of the Hobbs

5   Act where physical threats are employed. *Daane*, 475 F.3d at 1119-1120.

6   Accordingly, any argument regarding the actual legitimacy or validity of the

7   contracts signed by Dean, and Martin's concomitant "claim of right" is excluded

8   under *Daane*. As for evidence regarding the details of precisely how Martin lost

9   the money invested with Montlouis and whether Montlouis' resulting debt to

10  Martin was legitimate (addressed partially by the first three statements of the

11  proffer), Martin states in his briefing that focusing on such details would result in

12  a trial "which would extend weeks beyond the anticipated length of the trial

13  involving Dean, and would certainly be a waste of this Court's time and

14  resources." (Martin Opp. at 3:20-24.) Therefore, despite Martin's proffer, it

15  appears that Martin agrees with the Government that the precise circumstances of

16  how Martin first came to be owed money by Montlouis have minimal relevance to

17  the case and their introduction into evidence could easily become a distraction to

18  the jury and waste this Court's time and resources. Accordingly, evidence of

19  whether Montlouis' debt was legitimately owed and the circumstances giving rise

20  to that debt is excluded under the Rule 403 analysis here and the "claim of right"

21  analysis under *Daane*.

22  //

23  //

24  //

25  //

26  //

27  //

28  //

1

**CONCLUSION**

2

Based on the foregoing, the Court GRANTS the Government's Motion *In*

3

*Limine* to Exclude Evidence and Argument Relating to "Claim of Right" Defense.

4

IT IS SO ORDERED.

5

6

DATED:   February 20, 2009          By

7

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28