1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN MARTIN, et al.<br><br>Defendants. | No.  CR 07-1205 (B)CBM<br><br>AMENDED ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BRIAN MARTIN'S MOTION TO DISMISS FIRST SUPERSEDING INDICTMENT PURSUANT TO FRCrP 12(b)(3); OR, IN THE ALTERNATIVE, MOTION TO STRIKE SURPLUSAGE FROM FIRST SUPERSEDING INDICTMENT |

The matter before the Court is Defendant Brian Martin's Motion to Dismiss First Superseding Indictment Pursuant to FRCrP 12(b)(3) (the "Motion to Dismiss"), or, in the alternative, Motion to Strike Surplusage From First Superseding Indictment (the "Motion to Strike").[1] [Doc. No. 119]. Defendant

---

[1] The operative indictment in this case is the Second Superseding Indictment, which the Government filed on January 23, 2009, [Doc. No. 139], 10 days after Martin filed the present Motion. During oral argument on February 17, 2009, Martin requested that this Motion be directed to the Second Superseding Indictment. Accordingly, the Court has replaced specific references to the paragraphs contained in the First Superseding Indictment with the corresponding paragraphs contained in the Second Superseding Indictment.

Travis Zipper joins Martin's Motion. [Doc. No. 136.] This Order is amended to address the Government's "Brief in Support of Admissibility of Conversations Between Defendants Zipper and Martin Concerning 'Montlouis Money.'" [Doc. No. 192.] The parties appeared before the Court for oral argument and upon consideration of the papers and arguments presented, the Court DENIES Defendants' Motion to Dismiss and GRANTS IN PART and DENIES IN PART Defendants' Motion to Strike.

## BACKGROUND

Defendants Brian Martin ("Martin") and Travis Zipper ("Zipper") are accused of participating in a conspiracy to extort money by threats and force from various individuals in connection with the collection of a loan. Defendant Keith Robbison ("Robbison") has pled guilty to Count I of the First Superseding Indictment, which alleged conspiracy to interfere with commerce by threats and to travel interstate in aid of racketeering activities in violation of 18 U.S.C. § 371. Robbison is not charged in the Second Superseding Indictment.

**I.     Relevant Facts**

The charges in this case arise out of an alleged attempt by Martin to obtain money that he lost through a business investment. The Government alleges that in 2007, Martin invested approximately $500,000 with an individual named Kenneth Montlouis ("Montlouis"). (Second Superseding Indictment ("Indictment") at ¶¶ 7a; 8a.) When Martin did not receive the investment return that he expected, he traveled to Africa with Robbison, where Montlouis was then staying, to recover his money. (*Id.* at ¶¶ 7b, 8a.) Martin and Robbison met with Montlouis in Africa and Martin threatened to harm Montlouis if he did not receive his money back. (*Id.* at ¶¶ 7b; 8b.) Subsequently, Martin had Montlouis imprisoned in Africa. (*Id.* at ¶ 7b.)

After returning from Africa, Martin allegedly attempted to recover his money by threatening Montlouis' girlfriend and some of Montlouis' associates.

1  (Indictment at ¶¶ 7c, 8d-e.) When Martin was unable to collect money from
2  Montlouis and others, Martin asked an individual in Africa to murder Montlouis.
3  (*Id.* at ¶¶ 8g, i, m.)
4       In May 2007, Martin learned that an individual named Jonathan Dean
5  ("Dean") owed Montlouis money. (*Id.* at ¶ 7b.) On or about May 7, 2007, Martin,
6  Zipper and Robbison traveled to California to meet Dean at a restaurant. (*Id.* at
7  ¶ 8j.) Martin told Dean that he could pay his debt to Montlouis by giving Martin
8  $500,000. (*Id.*) He purportedly implied that, if Dean did not pay the money, Dean
9  would be injured. (*Id.* at ¶ 8k.)
10       Over the next few months, Dean made sporadic payments totaling tens
11  thousands of dollars by depositing money into Zipper's bank account. (*Id.* at
12  ¶¶ 8q-r.) When Dean missed a payment, Martin would send a text message to
13  Dean, implying that he, his family members, or his roommates would be
14  physically harmed. (*Id.* at ¶¶ 7h, 8t, u, y, bb, cc, hh, kk.) In addition, in order to
15  induce Dean to pay, Martin, Zipper and Robbison repeatedly informed Dean that
16  Montlouis was going to be physically harmed or murdered at Martin's request.
17  (*Id.* at ¶¶ 7j, 8p, ll, mm.)

## LEGAL STANDARD

19       Under Federal Rule of Criminal Procedure 12(b), "[a]ny defense, objection
20  or request which is capable of determination without the trial of the general issue
21  may be raised before trial by a motion." FED. R. CRIM. P. 12(b). A motion to
22  dismiss is generally "capable of determination" before trial "if it involves
23  questions of law rather than fact." *United States v. Nukida*, 8 F.3d 665, 669 (9th
24  Cir. 1993); *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th
25  Cir. 1986). Dismissal under Rule 12(b)(3) is inappropriate where the motion
26  involves disputed facts. *See Nukida*, 8 F.3d at 669; *compare United States v.
27  Phillips*, 367 F.3d 846, 855 (9th Cir. 2002) (indictment may be dismissed for
28  insufficient evidence when the facts are essentially undisputed). In considering a

pretrial motion to dismiss all or part of an indictment, the court "must presume the truth of the allegations in the charging instruments." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996). Further, the court is prohibited from considering "evidence not appearing on the face of the indictment." *Id.*

The purpose of a motion to strike [surplusage] under Fed. R. Crim. P. 7(d) is to protect a defendant against 'prejudicial or inflammatory allegations that are neither relevant nor material to the charges.'" *United States v. Terrigno*, 838 F.2d 371, 373 (9th Cir. 1988) (quoting *United States v. Ramirez*, 710 F.2d 535, 544-45 (9th Cir. 1983)). The district court has discretion in ruling on a motion to strike surplusage. *Terrigno*, 838 F.2d at 373.

## DISCUSSION

Defendants move to dismiss the Indictment for failure to state a claim. (Mot. at 1:21-2:7.) In the alternative, Defendants move to strike the surplusage in the Indictment, specifically, references to the acts that allegedly occurred in Africa (the "Africa Acts"), because (1) the Africa Acts violate Martin's Fifth Amendment due process rights because they are unrelated to the actual charges in this case; (2) the Court does not have jurisdiction over the Africa Acts; (3) the Africa Acts violate Rule 404(b) because they are highly prejudicial and irrelevant. (*Id.* at 1:21-2:7.)

### A. Motion to Dismiss

Defendants argue that the Government has failed to state an offense for extortion pursuant to 18 U.S.C. § 1951 because Martin "had a lawful claim to the [money] he was receiving from Dean" (hereinafter referred to as Martin's "claim of right"). (Mot. at 8:5.) In addition, Defendants argue that the Government fails to properly allege a violation of the Travel Act (which requires travel in interstate commerce with the intent to engage in an unlawful activity) because the only activity referred to pertains to Martin's lawful debt collection efforts. (*Id.* at 10:4-7.) In support, Defendants cite to various contracts that Martin entered into with

Dean, allegedly acknowledging Dean's agreement to pay money due and owing to Martin. (Mot. at 5:9-13.) Martin further avers that he never made any threats to Dean and that "he would never do anything illegal." (*Id.* at 7:15-8:2.) Defendants also argue that the Government has failed to state an offense for transmitting communications containing threats to injure a person in interstate commerce pursuant to 18 U.S.C. § 875 because the Government has not alleged any "threats of bodily injury or kidnapping." (*Id.* at. 9:16-22.) In particular, Defendants assert that the allegations contained in the Indictment state that Martin's communications "imply" the threat of injury. (*Id.* at 9:27-28.)

      As an initial matter, nearly all of the facts Defendants rely on in support of Martin's "claim of right" are outside of the Indictment. In determining whether the Indictment survives a motion to dismiss, the Court is prohibited from considering evidence not appearing on the face of the indictment. *Jensen*, 93 F.3d at 669 (holding the district court erred in considering evidence provided by defendants in support of defendants' motion to dismiss the indictment). Moreover, all of Martin's "claim of right" facts are fundamentally in dispute and strongly contested by the Government. The Government asserts that Defendants' actions in this case constitute extortion. In direct opposition, Martin maintains that his actions were lawful debt collection efforts. Accordingly, it would not be proper for this Court to dismiss the Indictment based on Martin's "claim of right" arguments because the motion is premised on arguments of evidence outside of the Indictment and questions of fact that are in dispute. *See Nukida*, 8 F.3d at 669 (A motion to dismiss is generally "capable of determination" before trial "if it involves questions of law rather than fact."); *compare Phillips*, 367 F.3d at 855 (indictment may be dismissed for insufficient evidence when the facts are essentially undisputed).

      Defendants' arguments regarding the alleged "implied" threats also fail. The Indictment does not charge Martin with making implied threats, but, rather

that Martin made threats that implied to Dean that he and/or his family members and roommates would be physically harmed if Dean did not pay Martin. Although the statutes that include threats as an element of the charge do not indicate whether the threats be "explicit" or "direct," issues regarding the sufficiency of the Government's evidence are not a proper matter for the court to adjudicate through a motion to dismiss. *Jensen*, 93 F.3d at 669 (The rules do not "provide for a pre-trial determination of the evidence.") (quoting *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992)). These questions are properly reserved for the jury.

Accordingly, the Court denies Defendants' Motion to Dismiss.

### B.     Motion to Strike

Defendants move to strike as surplusage allegations in the Indictment regarding alleged acts that occurred in Africa between Martin and Montlouis. (Mot. at 11:13-14.) Defendants initially challenge this Court's jurisdiction over the Africa Acts, but provide no relevant authority in support of this argument. The Court finds that it has jurisdiction over these acts. The crime of conspiracy, 18 U.S.C. § 371, is a continuing offense, the prosecution of which is proper "in any district in which such offense was begun, continued or completed." 18 U.S.C. § 3237(a); *see also Hyde v. Shine*, 199 U.S. 62, 76-77 (1905) ("[I]f the conspiracy be entered into within the jurisdiction of the trial court, the indictment will lie there, though the overt act is shown to have been committed in another jurisdiction, or even in a foreign country.")

Next, Defendants argue that allegations regarding the Africa Acts should be stricken because they are irrelevant and prejudicial because they constitute improper 404(b) evidence of prior bad acts and do not assist the jury in its fact-finding mission. (Mot. at 13:2-13.) Defendants specifically request that the Court strike the following paragraphs of the Indictment:

1. ¶ 7a: Defendant[] Martin traveled with Keith Robbison to Africa in order to locate an individual ("K.M.") with whom defendant Martin had invested $500,000.

2. ¶ 7b: After K.M. was unable to return this money to defendant Martin, defendant Martin threatened K.M. and caused him to be imprisoned.
3. ¶ 7c: After being unable to obtain money from K.M., defendant Martin attempted to collect money from K.M.'s girlfriend ("E.G.") ***and business associates (including "M.O." and "C.T.") by impliedly threatening them and/or K.M. with harm***. [Note: Defendants move to strike only the language in bold italics.]
4. ¶ 7j: In order to induce payment, defendant Martin, defendant Zipper, and Keith Robbison told J.D. and others that K.M. was going to be physically harmed or murdered, and defendant Martin attempted to carry out his murder.
5. ¶ 8a: On or about April 7, 2007, defendant Martin traveled with Keith Robbison from the United States to Ghana, Africa, to locate K.M.
6. ¶ 8b: At a meeting in Africa attended by K.M., defendant Martin, and Keith Robbison on or about April 11, 2007, defendant Martin told K.M. in substance: "mother fucker, I told you…don't mistake who you're dealing with….I told you I am not a normal business man."
7. ¶ 8f: On or about April 23, 2007, defendant Martin informed defendant Zipper about his efforts to threaten one of K.M.'s associates, C.T.
8. ¶ 8g: On or about April 25, 2007, after being unable to collect money from K.M. or others, defendant Martin asked an individual in Africa ("C.") to murder K.M.
9. ¶ 8h: On or about April 30, 2007, defendant Martin emailed one of K.M.'s associates, M.O., a picture of K.M. in handcuffs and asked M.O. to "advise your time frame on paying" money to an associate of defendant Martin.
10. ¶ 8i: On or about May 3, 2007, defendant Martin urged C. to complete the murder of K.M.
11. ¶ 8m: On or about May 9, 2007, defendant Martin called C. to ask him to expedite the murder of K.M. in exchange for compensation.
12. ¶ 8p: On or about June 14, 2007, Keith Robbison, as defendant Martin's direction, traveled from outside the State of California to J.D.'s residence in Alta Loma, California, where he told J.D. that K.M. was dead and that he, Keith Robbison, was not to leave before obtaining money from J.D.
13. ¶ 8ll: At the meeting in Rancho Cucamonga, California, on or about October 2, 2007, defendant Zipper told J.D. that K.M. was "not getting out" of Africa.
14. ¶ 8mm: At the meeting in Rancho Cucamonga, California, on or about October 2, 2007, defendant Martin told J.D. that K.M. was going to be murdered.

(*See* Mot. at 11:20-22.)

In opposition, the Government asserts that allegations regarding the Africa Acts are not surplusage, but, rather, they are "highly relevant" and "central to understanding[] the extortion scheme perpetrated by [D]efendants." (Opp. at 8:19; 9:1-3.) Specifically, the Government points out that Martin only learned of

Dean's existence after he traveled to Africa and threatened Montlouis. (Opp. at 9:8-10.) Thus, the allegations are necessary to explain the scope of the conspiracy and how Defendants' became involved with Dean. (*Id.* at 9:16-19.) Additionally, the Government argues that the allegations regarding Africa and Montlouis are necessary to explain "one of the principal devices by which the extortion was carried out. In particular, the "[D]efendants repeatedly attempted to intimidate and extort money from…Dean by stating either…Montlouis was dead or would be murdered shortly." (*Id.* at 9:19-24.)

The Court agrees with the Government's assertion insofar as it applies to Paragraphs 7a, 7c (up to "E.G."), 7j (excluding "and defendant Martin attempted to carry out his murder"), 8a, 8f, 8p, 8ll, and, 8mm. The allegations contained in these paragraphs are inextricably intertwined with the crimes charged in this case. Specifically, Paragraphs 7a, 7c (up to "E.G."), and 8a are necessary to explain the origin of Dean's debt to Martin and for the Government to establish Defendants' connection to Dean. Paragraph 8f is relevant to establish the existence and origins of the conspiracy in this case, as well as Zipper's alleged knowledge of the extortionate conduct allegedly undertaken by Martin to collect the debt at issue in this case. Paragraphs 7j (excluding "and defendant Martin attempted to carry out his murder"), 8p, 8ll, and, 8mm are a central part of Defendants' threats against Dean. Defendants are alleged to have repeatedly attempted to intimidate and extort money from Dean by alerting Dean to the consequences Montlouis was facing after he failed to pay his debt to Martin. These statements could be construed by Dean as implying that Dean would face similar consequences if he did not pay Defendants. Accordingly, the Court denies Defendants' Motion to Strike with respect to these Paragraphs.

However, the Court disagrees with the Government's position with respect to the allegations contained in Paragraphs 7b, 7c (after "E.G."), 7j (only as to "and defendant Martin attempted to carry out his murder"), 8b, 8g, 8h, 8i, and, 8m.

While there is some probative value to these allegations, it is outweighed by the prejudice to Defendants. Evidence of Martin's alleged threats towards Montlouis and Martin's actions in Africa, while relevant to telling the entire story, is not critical for the Government to prove its case. The Government is able to explain Montlouis' connection to Martin and, eventually, Martin's connection to Dean, without introducing evidence of the threatening acts in Africa (including evidence that Martin had Montlouis imprisoned). Moreover, evidence of Martin's threats against Montlouis, including his actions in having Montlouis imprisoned in Africa and arranging for Montlouis' murder, is highly prejudicial. The danger here is that the jury could conclude that because Martin committed these acts against Montlouis, he must have also threatened Dean. Accordingly, the Court grants Defendants' Motion to Strike with respect to these Paragraphs.

## CONCLUSION

Based on the foregoing, the Court DENIES Defendants' Motion to Dismiss and GRANTS IN PART and DENIES IN PART Defendants' Motion to Strike Surplusage. Specifically, the Court GRANTS the Motion to Strike as to Paragraphs 7b, 7c (after "E.G."), 7j (only as to "and defendant Martin attempted to carry out his murder"), 8b, 8g, 8h, 8i, and, 8m and DENIES the Motion to Strike as to Paragraphs 7a, 7c (up to "E.G."), 7j (excluding "and defendant Martin attempted to carry out his murder"), 8a, 8f, 8p, 8ll, and, 8mm.

IT IS SO ORDERED.

DATED: March 10, 2009    By_____
CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE